## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FILED: JULY 2, 2008
08CV3789
JUDGE ANDERSEN
MAGISTRATE JUDGE COX

PH   **Case No.**

|  |  |
|---|---|
| **LASHANDA DANDRIDGE,** | ) |
| **Petitioner,** | ) |
| **v.** | ) |
| **HOUSING AUTHORITY** | ) |
| **OF PARK FOREST,** | ) |
| **Respondent.** | ) |

### NOTICE OF REMOVAL

NOW COMES the Respondent, HOUSING AUTHORITY OF PARK FOREST, named

as Respondent in the Summons, Notice of Motion, Petition for Certiorari, and Petitioner's

Motion for Stay or in the Alternative a Temporary Restraining Order and Preliminary Injunction,

by and through its attorneys, GARDINER KOCH & WEISBERG, and in accordance with 28

U.S.C. § 1446, submits this Notice of Removal for removal of this action from the Circuit Court

of Cook County, Illinois, County Department, Chancery Division to the United States District

Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1441(a)-(b).

In support of its Notice of Removal, Respondent states as follows:

1.       This civil action was filed on June 17, 2008, in the Circuit Court of Cook County,

Illinois, County Department, Chancery Division as Case No. 08-CH-21882.

2.       Ernestine Watson, Executive Director of the Housing Authority of Park Forest,

received by mail the Summons, Notice of Motion, Petition for Certiorari, and Petitioner's Motion

for Stay or in the Alternative a Temporary Restraining Order and Preliminary Injunction on June

20, 2008 at the Housing Authority of Park Forest, located at 350 Victory Drive, Park Forest,

Illinois 60466, but listed as 301 Centre, Park Forest, Illinois 60466 on Petitioner's documents.

Ms. Watson was subsequently served with said documents on July 2, 2008 at the Housing

Authority of Park Forest, located at 350 Victory Drive, Park Forest, Illinois 60466, but listed as

301 Centre, Park Forest, Illinois 60466 on Petitioner's documents.

3.      Notice of Removal is being filed within thirty (30) days after the date that

Respondent was served with or otherwise received the Summons, Notice of Motion, Petition for

Certiorari, and Petitioner's Motion for Stay or in the Alternative a Temporary Restraining Order

and Preliminary Injunction setting forth Petitioner's claim for relief.

4.      This action is a civil action of which this Court has original jurisdiction under 28

U.S.C. § 1331 and is one that Respondent is entitled to remove to this Court pursuant to 28

U.S.C. § 1441(b) in that:

        a.      Petitioner brings civil action for deprivation of rights claims against

Respondent arguing improper administration of the law by the Housing Authority of Park Forest

based upon the HUD Housing Choice Voucher Program, 24 C.F.R. § 982 (hereinafter "Voucher

Program").

5.      As a result, Petitioner's claims against Respondent are governed under the law of

the United States.

6.      In accordance with 28 U.S.C. § 1446(a), Respondent states that the following

documents constitute all the process, pleadings and orders served upon that Respondent:

        a.  Summons;
        b.  Notice of Motion;
        c.  Petition for Certiorari;
        d.  Petitioner's Motion for Stay or in the Alternative a Temporary Restraining Order
            and Preliminary Injunction.

True and correct copies of the Petitioner's Summons, Notice of Motion, Petition for Certiorari, and Petitioner's Motion for Stay or in the Alternative a Temporary Restraining Order and Preliminary Injunction are attached hereto as Exhibits A, B, C, and D respectively.

7.    A true and correct copy of this Notice of Removal shall be filed with the Clerk of the Circuit Court of Cook County, Illinois, County Department, Chancery Division, in accordance with 28 U.S.C. § 1446(d).


**DATED: July 2, 2008**

Respectfully submitted,

HOUSING AUTHORITY OF PARK FOREST

By:_____

Thomas G. Gardiner
GARDINER KOCH & WEISBERG
53 W. Jackson Blvd., Suite 950
Chicago, IL  60604
312-362-0000
Attorney No.: 29637

08CV3789
JUDGE ANDERSEN
MAGISTRATE JUDGE COX

PH



| 2120 - Served | 2121 - Served | |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-10M-1-07-05 ( ) |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

(Name all parties)

Lashanda Dandridge

v.

Housing Authority of Park Forest

No. 08CH21882

Housing Authority of Park Forest
301 Centre
Park Forest, Illinois 60466

## SUMMONS

To each Defendant:

YOU ARE SUMMONED, and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

WITNESS, JUN 17 2008

Atty. No.: 37201

Name: Astrid C. Montealegre

Atty. for: Plaintiff

Address: 900 E. 162nd St., Suite 101

City/State/Zip: South Holland, IL 60473

Telephone: 708-271-4950

Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)   (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS



3303

CCG N003-150M-2/27/04 (3335092)

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

LASHANDA DANDRIDGE

v.

HOUSING AUTHORITY OF PARK FOREST

} No. 08CH21888

## NOTICE OF MOTION

To: Housing Authority of Park Forest

301 Centre

Park Forest, IL 60466

On July 8, 2008, at 9:30 p.m. or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Agran Room 2102 or any judge sitting in that Judge's stead, in the courtroom usually occupied by him/her, located at Richard J. Daley Center, Chicago IL 60602 and present

Motion for Stay, Temporary Restraining Order and/or Preliminary Injunction

Name Astrid C. Montealegre        Atty. No. 37201

Address 900 E. 162nd St., Suite 101    Attorney for Plaintiff

City/State/Zip South Holland, IL        Telephone 708-271-4950

### PROOF OF SERVICE BY DELIVERY

I, _____, the attorney/non attorney* certify that on the ____ day of (*strike one)

June _____, 2008, I served this notice by delivering a copy personally to each person to whom it is directed.

                                              Date June 17 _____, 2008

                                              _____
                                              Signature/Certification

### PROOF OF SERVICE BY MAIL

I, Astrid C. Montealegre _____, the attorney/non attorney* certify that I served this notice by mailing (*strike one)

a copy to Housing Authority of Park Forest    at 301 Centre, Park Forest, IL 60466 (address on envelope)

and depositing the same in the U. S. Mail at 111 W. Jackson, 3rd Floor, Chicago IL 60604 (place of mailing)

at 5:00 a.m./p.m. on the 17th day of June _____, 2008, with proper postage prepaid.

                                              Date June 17 _____, 2008

                                              _____
                                              Signature/Certification

NOTE: If more than one person is served by delivery or mail, additional proof of service may be made by attaching an additional sheet to this Notice of Motion.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**



## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

LASHANDA DANDRIDGE,     )
    )
    Petitioner,     )
    )
    )
    v.     )     No.
    )
HOUSING AUTHORITY OF PARK     )
FOREST, an Agent of the Housing     )
Authority of the County of Cook,     )
    )
    Respondent.     )

08CH21882

### PETITION FOR CERTIORARI

The petitioner, **LASHANDA DANDRIDGE**, seeks judicial review on certiorari, as provided by common law, of a final administrative decision by the Housing Authority of Park Forest to terminate her housing assistance. In support of this petition, Ms. Dandridge states as follows:

### PARTIES

1.     The petitioner, LaShanda Dandridge, lives in the premises located at 402 Rutledge Street, Park Forest, Illinois ("402 Rutledge Street").

2.     Ms. Dandridge's tenancy is subsidized under the Section 8 Housing Choice Voucher Program ("Voucher Program").

3.     The respondent, HOUSING AUTHORITY OF PARK FOREST ("Housing Authority"), is an agent of the Housing Authority of the County of Cook that administers the Voucher Program in suburban Cook County.

1

## REGULATORY BACKGROUND

4.     The Voucher Program is governed by the federal regulations codified at

24 C.F.R. Part 982, and administered by State or local entities called public housing agencies

("PHAs").  24 C.F.R. § 982.1(a).

5.     Pursuant to the terms of the Voucher Program:

> HUD pays rental subsidies so eligible families can afford decent, safe and sanitary
> housing . . . .  Families select and rent units that meet program housing quality
> standards.  If the PHA approves a family's unit and tenancy, the PHA contracts
> with the owner to make rent subsidy payments on behalf of the family. . . .  [T]he
> subsidy is based on a "local payment standard" that reflects the cost to lease a unit
> in the local housing market.  If the rent is less than the payment standard, the
> family generally pays 30 percent of adjusted gross monthly income for rent.  If the
> rent is more than the payment standard, the family pays a larger share of the rent.

24 C.F.R. § 982.1.

6.     The Family Obligations of Voucher Program participants include the following:

> (a) *Purpose.* This section states the obligations of a participant family under the
> program. . . .
> (l) *Crime by household members.* The members of the household may not engage
> in drug-related criminal activity or violent criminal activity or other criminal
> activity that threatens the health, safety or right to peaceful enjoyment of other
> residents and persons residing in the immediate vicinity of the premises (see
> §§982.553).

24 C.F.R. § 982.551(l).

7.     The PHA may terminate a participant's voucher assistance if the participant

violates any family obligations under the Voucher Program.  24 C.F.R. § 982.552(c)(1)(i).

8.     The PHA may take into account mitigating circumstances regarding a

participant's termination from the program:

> *Consideration of circumstances.* In determining whether to deny or terminate
> assistance because of action or failure to act by members of the family:

2

(i) The PHA may consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure.

(ii) The PHA may impose, as a condition of continued assistance for other family members, a requirement that other family members who participated in or were culpable for the action or failure will not reside in the unit. The PHA may permit the other members of a participant family to continue receiving assistance.

24 C.F.R. § 982.552(c)(2).

## STATEMENT OF FACTS

9.  Ms. Dandridge first entered the Voucher Program in 1996 through the Chicago Housing Authority, the agency responsible for administering the Voucher Program in Metropolitan Chicago. In 2002, Ms. Dandridge transferred from the Chicago Housing Authority to the Housing Authority of Park Forest when she moved to the premise at 402 Rutledge Street.

10.  From May 2002 until February 14, 2008, Ms. Dandridge has resided at 402 Rutledge Street and was never cited for violating the terms of her lease or the terms of the Voucher Program.

11.  Every year, for the last twelve years Ms. Dandridge submitted a detailed recertification application to continue in the Voucher Program. The application requires full disclosure of sources of income, household composition, living expenses, and criminal convictions or arrests. Never once in those twelve years was Ms. Dandridge found in violation of the terms of the Voucher Program or her leases.

12.  Ms. Dandridge resides with her two children, DaShawn, sixteen years old, and DaJuan, fourteen years old, and her cousin Waylan Hughes, twenty-four years old.

3

13.     On February 14, 2008, DaShawn and two other friends were at home at 402 Rutledge Street. DaJuan was upstairs in his room while Waylan Hughes and Ms. Dandridge were not at home. A gun was discharged in the backyard of the house and police responded on the scene. After interrogating DaShawn, DaJuan and DaShawn's two friends, DaShawn was arrested and charged with unlawful possession of a firearm. No one was harmed by the discharge. As a result, DaShawn spent one month in juvenile detention. Neither DaJuan nor any other household member was charged in connection with the incident.

14.     Neither Ms. Dandridge, her son DaJuan, nor Waylan Hughes had any knowledge that a gun was in DaShawn's possession or located on the premise at 402 Rutledge Street. Ms. Dandridge had no prior knowledge nor reason to suspect that her son DaShawn was involved, or could be involved, in criminal activity.

15.     No member of Ms. Dandridge's household had a criminal record prior to the incident on February 14, 2008.

16.     On March 5, 2008, Ms. Dandridge received a letter from the Housing Authority of Park Forest stating that she was in violation of the Voucher Program rules as a result of the incident of February 14, 2008, and that she would be terminated from the Voucher Program effective April 30, 2008. A copy of this letter is attached as Exhibit A.

17.     Ms. Dandridge appealed this decision within the requisite ten days.

18.     An informal hearing was held on April 24, 2008. At the hearing, Ms. Dandridge presented a notarized letter from Charles Israel attesting to the fact that he would take custody of DaShawn on May 27, 2008--the last day of the school year. A copy of the letter from Charles Israel is attached as Exhibit B. Ms. Dandridge also testified to the adverse affects that the

4

Voucher revocation would have on not only herself, but on her son, DaJuan, and her cousin Waylan Hughes who live with her.

19.    On May 15, 2008, the Housing Authority hearing officer issued a written decision upholding the termination of Ms. Dandridge's housing assistance. A copy of the decision is attached as Exhibit C.

20.    The hearing officer's decision is contrary to law and against the manifest weight of the evidence for two reasons:

First, the Housing Authority abused its discretion by failing to consider mitigating circumstances pursuant to 24 C.F.R. § 982.552(c)(2)(i), including: the lack of participation and culpability on the part of Ms. Dandridge, her son DaJuan, and Waylan Hughes in the violation, the lack of knowledge or foreseeability of DaShawn's actions, and the devastating effect the termination of assistance will have on the lives of the family members who were not culpable for the violation.

Second, the Housing Authority abused its discretion by failing to pursue an alternative, less extreme sanction pursuant to 24 C.F.R. § 982.552(c)(2)(ii), specifically by continuing assistance conditioned on a requirement that DaShawn no longer be allowed to reside at 402 Rutledge Street.

21.    On May 27, 2008, Ms. Dandridge relinquished custody of DaShawn to his father, Charles Israel. DaShawn has been living with his father at his home since that date. DaShawn has not visited the premises at 402 Rutledge Street since he moved out.

WHEREFORE, Petitioner prays that this Honorable Court:

A.    Order the Housing Authority of Park Forest to file an answer consisting of the entire record of proceedings in this matter, including but not limited to all

5

documents relating to the Housing Authority's lease compliance determination, all

documents relating to the application for issuance of the voucher and a transcript

of the informal hearing;

B.    Enjoin the Housing Authority from terminating Ms. Dandridge's housing

assistance while this case is pending;

C.    Order the Housing Authority to pay delinquent rent to the landlord at 402

Rutledge Street for the months of May and June.

D.    Reverse the Housing Authority's final administrative decision to terminate Ms.

Dandridge's housing assistance; or

E.    In the alternative, remand this matter back to the Housing Authority for a new

hearing; and

F.    Grant such further relief as may be proper and just.

Respectfully submitted

Petitioner's Attorney

Astrid Montealegre
Legal Assistance Foundation of Metropolitan Chicago
900 East 162nd Street, Suite 101
South Holland, Illinois 60471
Tel: (708) 271-4950 Fax: (708) 596-4108
Attorney No. 37201

6

## VERIFICATION

Under penalties as provided by law, pursuant to Section 5/1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief. As to such matter, the undersigned certifies that she believes the same to be true, and if called as a witness, could testify competently thereto.

LaShanda Dandridge





EXHIBIT A

March 5, 2008


Ms. LaShanda Dandridge
402 Rutledge
Park Forest, IL  60466

Dear Ms. Dandridge:

This letter is to advise you that we have received documented information that you are in violation of the Housing choice Voucher program rules and guidelines. The Housing Choice Voucher program and all federally assisted housing are under the "One Strike" Policy. This policy states that one incidence of criminal activity is sufficient grounds to terminate participants from the program. Criminal behavior by any household member or guest, regardless of the applicant's knowledge of the behavior is grounds for termination of assistance.

On February 14, 2008, Park Forest police officers responded to a call of gunshots in the area and while in the area heard shots coming from the back yard of your residence. Upon investigation that resulted in a search warrant, weapons, ammunition, U S Currency and suspected cannabis were recovered from the residence and retained as evidence. As a result of this criminal activity, your assistance is being terminated effective April 30, 2008. If you wish to appeal this decision, your request must be in writing and received by the Housing Authority within 10 days from the date of this letter. If your request is not received within the required period, you will waive your right to a hearing and our decision to terminate your assistance will be final. This does not constitute a waiver of your rights to appropriate judicial proceedings.

If you continue to occupy this residence after the effective date of the termination, you will be responsible for paying the full amount of rent to the owner.

Sincerely,

Ernestine Y. Watson
Executive Director


Cc: Peggy Lopez, Landlord
      Housing Authority of the County of Cook


**Park Forest Village Hall • 350 Victory Drive • Park Forest, IL 60466 • 708.748.1112 • FAX 708.748.4358**

# EXHIBIT B

I Lashanda Dandridge am appointing guardianship for DaShawn Dandridge to his father Charles Israel to take affect on the last day of school which is May 27, 2008. DaShawn Dandridge will no longer reside with me in Park Forest, IL as I LaShanda Dandridge can no longer provide for him. Charles Israel will have total guardianship for DaShawn Dandridge.

Charles Israel will as of May 27, 2008 make all decisons for DaShawn's dwelling, health, educational needs, and will consent to any medical care or treatment that he may need.

Thank you,

LaShanda Dandridge

I agree to that I am totally responsible for my son DaShawn Dandridge and am happy and willing to take guardianship of him.

Charles Israel

4/23/2008

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| LASHANDA DANDRIDGE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| HOUSING AUTHORITY OF PARK | ) | |
| FOREST, an Agent of the Housing | ) | |
| Authority of the County of Cook, | ) | |
| | ) | |
| Respondent. | ) | |

## AFFIDAVIT

LASHANDA DANDRIDGE, being first duly sworn on oath deposes and says that:

1.    I am the Petitioner in the action, LaShanda Dandridge v. Housing Authority of Park

Forest

2.    I reside with my son, DaJuan, and my cousin, Waylan Hughes, in the premises located at

402 Rutledge Street, Park Forest, Illinois ("402 Rutledge Street") since May 2002.  I have never

been in violation of the terms of the lease.

3.    I have been a participant of the Section 8 Housing Choice Voucher Program ("Voucher

Program") since 1996.  I have never been in violation of the terms of the Voucher Program.

4.    I did not participate in the violation that occurred on February 14, 2008.

5.    I had no prior knowledge or reason to believe that my son, DaShawn would engage in

criminal behavior.

6.    DaShawn is an excellent student who receives high praise from his teachers.

7.    I relinquished custody of my son DaShawn to his father, Charles Israel, on May 28, 2008,

the last day of DaShawn's school term.

EXHIBIT  D

7.   DaShawn terminated his residence at 402 Rutledge Street on May 28, 2008. DaShawn has not visited the premises located at 402 Rutledge Street since May 28, 2008.

8.   I do not pay rent for the premises located at 402 Rutledge Street as it is wholly subsidized by the Housing Authority of Park City ("Housing Authority"). The Housing Authority pays $1,000 per month in rent for 402 Rutledge Street.

9.   The Housing Authority has not made payments to the landlord of 402 Rutledge Street ("Landlord") for the months of May and June. I am currently delinquent for the rent of May and June.

10.   On June 13, 2008, the Landlord threatened to evict me and my family if I did not pay the delinquent rent. The Landlord has informed me that if I am terminated from the Housing Authority's Voucher Program, I will have to pay full rent of $1,500.

11.   I am employed as a customer service agent and have a monthly income of $1,667. I cannot afford to pay the full rent at 402 Rutledge Street and would be forced to move out if I am no longer subsidized by the Housing Authority.

FURTHER THE AFFIANT SAITH NOT

_LASHANDA D'ANDRIDGE_

Signed and Sworn to
before me this 16th day of
June 2008.

_NOTARY PUBLIC_

OFFICIAL SEAL
SHERICE A AUSTIN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/12/10



IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

LASHANDA DANDRIDGE,       )
                          )
            Petitioner,   )
                          )
        v.                )       No. 08CH21882
                          )
HOUSING AUTHORITY OF PARK )
FOREST, an Agent of the Housing )
Authority of the County of Cook, )
                          )
            Respondent.   )

## PETITIONER'S MOTION FOR STAY OR IN THE ALTERNATIVE A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Now comes the petitioner, LaShanda Dandridge, by her attorneys, Astrid C. Montealegre

and the Legal Assistance Foundation of Metropolitan Chicago, and moves this Court for the

issuance of a stay or in the alternative a temporary restraining order and preliminary injunction

enjoining Respondent Housing Authority of Park Forest ("Housing Authority") from terminating

her housing assistance payments pending the resolution of this case.

1

I.    INTRODUCTION

1-21.    The Petitioner, LaShanda Dandridge, restates the allegations set forth in ¶¶ 1-21 from her Petition for Certiorari and hereby incorporates it by reference.

22.    Petitioner's action for judicial review of the Respondents' administrative agency decision is a common law petition for certiorari rather than an administrative review action brought under the Administrative Review Law ("ARL"). Where the ARL has not been expressly adopted, the writ of common law certiorari is an available method of reviewing the actions of administrative agencies and tribunals. *Russell v. Dep't of Natural Resources*, 183 Ill. 2d 434, 440-41 (1998) (citing *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996); *Stratton v. Wenona Cmty. Unit Dist. No. 1*, 133 Ill. 2d 413, 427 (1990)). The Housing Authorities Act ("HAA") is the enabling statute for the Housing Authority of Park Forest. *See* 310 ILL. COMP. STAT. 10/1 *et seq.* (2008). Because the HAA makes no reference to the ARL, judicial review of the decisions from the Respondent Housing Authority is by certiorari.

23.    The differences that formerly existed between common law certiorari and administrative review actions filed under the ARL are no longer recognized. *Smith v. Dep't of Pub. Aid*, 67 Ill. 2d 529, 541-42, 10 Ill. Dec. 520 (1977) (citing *Homefinders, Inc. v. City of Evanston*, 65 Ill. 2d 115, 2 Ill. Dec. 565 (1976); *Nowicki v. Evanston Fair Hous. Review Bd.*, 62 Ill. 2d 11, (1975)). Furthermore, the standards of review for both kinds of actions are "essentially the same[.]" *See Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996).

2

24.     In ARL administrative review actions, circuit courts may "upon notice to the agency and good cause shown . . . stay the decision of the administrative agency in whole or in part pending the final disposition of the case." 735 ILL. COMP. STAT. 5/3-111(a)(1) (2008). Given that the Petitioner seeks judicial review of an administrative proceeding, she requests that the Court stay the Housing Authority's decision to terminate her housing assistance payments pending a final disposition of her petition for certiorari.

25.     Petitioner recognizes that in non-ARL actions, relief similar to a stay is sought through a motion for a temporary restraining order and preliminary injunction. *See* 735 ILL. COMP. STAT 5/11-101, 102 (2008). Therefore, in the alternative to her request for a stay, Petitioner seeks a temporary restraining order and a preliminary injunction enjoining Respondent Housing Authority from terminating her housing assistance payments pending the resolution of this case.

II.     STATEMENT OF FACTS

26.     Ms. Dandridge first entered the Voucher Program in 1996 through the Chicago Housing Authority, the agency responsible for administering the Voucher Program in Metropolitan Chicago. In 2002, Ms. Dandridge transferred from the Chicago Housing Authority to the Housing Authority of Park Forest when she moved to the premise at 402 Rutledge Street.

3

27.    From May 2002 until February 14, 2008, Ms. Dandridge has resided at 402 Rutledge Street and was never cited for violating the terms of her lease or the terms of the Voucher Program.

28.    Every year, for the last twelve years Ms. Dandridge submitted a detailed recertification application to continue in the Voucher Program. The application requires full disclosure of sources of income, household composition, living expenses, and criminal convictions or arrests. Never once in those twelve years was Ms. Dandridge found in violation of the terms of the Voucher Program or her leases.

29.    Ms. Dandridge resides with her two children, DaShawn, sixteen years old, and DaJuan, fourteen years old, and her cousin Waylan Hughes, twenty-four years old.

30.    On February 14, 2008, DaShawn and two other friends were at home at 402 Rutledge Street. DaJuan was upstairs in his room while Waylan Hughes and Ms. Dandridge were not at home. A gun was discharged in the backyard of the house and police responded on the scene. After interrogating DaShawn, DaJuan and DaShawn's two friends, DaShawn was arrested and charged with unlawful possession of a firearm. No one was harmed by the discharge. As a result, DaShawn spent one month in juvenile detention. Neither DaJuan nor any other household member was charged in connection with the incident.

31.    Neither Ms. Dandridge, her son DaJuan, nor Waylan Hughes had any knowledge that a gun was in DaShawn's possession or located on the premise at 402 Rutledge Street. Ms. Dandridge had no prior knowledge nor reason to suspect that her son DaShawn was involved, or could be involved, in criminal activity.

32.    No member of Ms. Dandridge's household had a criminal record prior to the incident on February 14, 2008.

4

33.    On March 5, 2008, Ms. Dandridge received a letter from the Housing Authority of Park Forest stating that she was in violation of the Voucher Program rules as a result of the incident of February 14, 2008, and that she would be terminated from the Voucher Program effective April 30, 2008. A copy of this letter is attached as Exhibit A.

34.    Ms. Dandridge appealed this decision within the requisite ten days.

35.    An informal hearing was held on April 24, 2008. At the hearing, Ms. Dandridge presented a notarized letter from Charles Israel attesting to the fact that he would take custody of DaShawn on May 27, 2008—the last day of the school year. Ms. Dandridge also testified to the adverse affects that the Voucher revocation would have on not only herself, but on her son, DaJuan, and her cousin Waylan Hughes who live with her.

36.    On May 15, 2008, the Housing Authority hearing officer issued a written decision upholding the termination of Ms. Dandridge's housing assistance. A copy of the decision is attached as Exhibit B.

37.    On May 27, 2008, Ms. Dandridge relinquished custody of DaShawn to his father, Charles Israel. DaShawn has been living with his father at his home since that date. DaShawn has not visited the premises at 402 Rutledge Street since he moved out.

III.    PETITIONER'S REQUEST FOR A STAY

38.    Pending the final disposition of a case, a circuit court may stay the decision of an administrative agency in whole or in part upon notice to the agency and good cause shown. *See* 735 ILL. COMP. STAT. 5/3-111(a)(1) (2008). A petitioner satisfies the "good cause" requirement by demonstrating: "(i) that an immediate stay is required in order to preserve the status quo without endangering the public, (ii) that it is not contrary to public policy, and (iii) that there exists a reasonable likelihood of success on the merits." *Id.*

       i.  *The Court's issuance of an immediate stay is required in order to preserve the status quo and does not endanger the public.*

39.    In Illinois court, the "'[s]tatus quo' has been described as that situation which represents the last, actual, peaceable, uncontested status preceding the pending controversy." Jones v. Dep't of Public Aid, 373 Ill. App. 3d 184, 193 (Ill. App. 3d Dist. 2007). Prior to the controversy, the landlord received full rent from the Housing Authority for 402 Rutledge Street. The pending controversy began on April 30, 2008 when the Housing Authority issued a final administrative decision upholding the termination of Ms. Dandridge's housing assistance payments. On May 1, 2008, the Housing Authority ceased paying Ms. Dandridge's rent. On June 13, 2008, the landlord of 402 Rutledge Street threatened to evict Ms. Dandridge if she did not pay rent for the months of May and June. (*See* Petr.'s Aff. ¶ 10.) Because Ms. Dandridge and her family cannot afford to pay any rent, they are currently at risk of being rendered homeless. Therefore, to preserve the status quo prior to the pending controversy, the Housing Authority must make payments for the months of May and June, and continue making payments for subsequent months, so that Ms. Dandridge and her family can continue residing in her home pending the resolution of this case.

6

40.    The Court's issuance of a stay to preserve the status quo, and to keep Ms. Dandridge in her unit, will in no way endanger the public. The perpetrator of the alleged violation, DaShawn, has been out of the household and under the guardianship of his father, Charles Israel, since May 27, 2008. (Petr.'s Aff. ¶ 7.) DaShawn does not visit the premises at 402 Rutledge Street. No member of Ms. Dandridge's current household has a criminal record or has engaged in criminal conduct. For these reason, the Court's issuance of a stay, allowing Ms. Dandridge's household to remain at 402 Rutledge Street, will in no way endanger the public. In the alternative, the absence of a stay will endanger Ms. Dandridge's family because they will be evicted for failure to pay rent and will be rendered homeless.

ii. *The Court's issuance of an immediate stay is not contrary to public policy.*

41.    Illinois courts determine the existence of public policy by looking to, *inter alia*, statutes. *Metz v. Dep't of Prof'l Regulation*, 332 Ill. App. 3d 1033, 1036, 266 Ill. Dec. 164, 167 (Ill. App. 1st Dist. 2002) (citing *Am. Fed'n of State, County & Mun. Employees v. Dep't of Cent. Mgmt. Servs.*, 173 Ill. 2d 299, 308, 219 Ill. Dec. 501, 507 (1996)). In the Housing Authorities Act, the Illinois legislature recognized the need for creating housing authorities "to promote and protect the health, safety, morals and welfare of the public" by engaging in efforts that would relieve the shortage of safe, decent, sanitary, and affordable housing. 310 ILL. COMP. STAT. 10/2 (2008). Similarly, the express purpose of the Respondents' Section 8 voucher program is to give eligible families the opportunity to afford safe, decent, and sanitary housing. *See* 24 C.F.R. 982.1(a)(1).

42.    Ms. Dandridge, a single mother with a monthly income of $1,667, cannot afford her full contract rent, which according to her landlord, would be at least $1,500 per month. (Petr.'s Aff. 11.) Because she cannot afford that amount, Ms. Dandridge, her son DaJuan, and

7

her cousin Waylan Hughes will almost certainly be evicted for nonpayment of rent and, because Ms. Dandridge cannot afford housing in the private market, will become homeless. A balance of hardships favors granting a stay because while the Housing Authority of Park Forest only has to continue the assistance they have provided Ms. Dandridge for the past twelve years, Ms. Dandridge and her young son stand to lose the only decent, safe, and sanitary housing they can afford. Maintaining the status quo is entirely consistent with the purpose of the Voucher Program, which is to administer "rental subsidies so eligible families can afford decent, safe and sanitary housing." 24 C.F.R. § 982.1(a)(1) (2008). Therefore, the Court's issuance of a stay of Respondent Housing Authority's termination of Ms. Dandridge's rental assistance, to prevent her certain loss of the only decent, safe, and sanitary housing she can afford pending the disposition of this case, is not contrary to the public policy of providing affordable housing to low-income residents.

>   *iii. The Petitioner enjoys a reasonable likelihood of success on the merits of her petition.*

43.     Prior to making its termination decision, the Housing Authority is required under its rules and regulations to consider mitigating circumstances. *Gaston v. CHAC, Inc.*, 375 Ill. App. 3d 16, 24, 313 Ill. Dec. 278 (Ill. App. 1st Dist. 2007). Mitigating factors include "the extent of participation or culpability of individual family members . . . and the effects of the denial or termination of assistance on other family members who were not involved in the action or failure." 24 C.F.R. 982.552(c)(2)(i) (2008). In addition, the hearing examiner may also "impose, as a condition of continued assistance a requirement that other family members who participated in . . . the action will not reside in the unit. 24 C.F.R. 982.552(c)(2)(ii). The hearing officer considered none of these circumstances or alternative remedies in upholding the termination of Ms. Dandridge's voucher assistance. As such, Ms. Dandridge will likely succeed

8

on the merits of her petition because proper consideration of her mitigating circumstances will further justify reversal of her termination from the Voucher Program.

44.     First, Ms. Dandridge, DaJuan and Waylan Hughes did not participate in any way in the violation that occurred on February 28, 2008. (The only person who acted in violation of the Voucher Program agreement was DaShawn, who no longer resides in the premises.) (Petr. Aff. ¶ 3.)

45.     Second, Ms. Dandridge had no prior knowledge of, nor reason to predict DaShawn's violation until the initial arrest. DaShawn is an excellent student, well liked by his teachers, with no prior incidents that would have forewarn Ms. Dandridge of any trouble. DaJuan Dandridge and Waylan Hughes were similarly unaware of DaShawn's activities.

46.     Third, the Housing Authority failed to consider the severe consequences on the entire household that would result from the termination of Ms. Dandridge from the Voucher Program. Ms. Dandridge has relied on voucher assistance for the past twelve years with no prior violations. She is a hard working single mother who wants a safe and clean environment to raise her fourteen year old son. If terminated from the program, Ms. Dandridge will be permanently bared from receiving future assistance and will be rendered homeless along with her young son DaJuan and her cousin Waylan Hughes. The Housing Authority failed to give due weight to the severity of terminating Ms. Dandridge's participation in the Voucher program.

47.     Ms. Dandridge's, and her household's, lack of participation in, and lack of prior knowledge of DaShawn's infractions is undisputed by the Housing Authority; nor is the severity of the consequences that would result from Ms. Dandridge's termination in dispute. Yet nowhere in the Housing Authority's final decision does the hearing examiner give weight to these mitigating circumstances. (*See* Hearing Examiner's Report, Exhibit B.) Therefore, the lack

9

of culpability and lack of knowledge of the three remaining household members supports the conclusion that Ms. Dandridge should be not have been terminated from the Voucher Program.

48.     Additionally, following DaShawn's arrest on February 28, 2008, Ms. Dandridge immediately realized the seriousness of her son's infraction and took necessary action. (Petr.'s Aff. ¶ 7-.) After DaShawn returned from Juvenile Detention, she gave up legal custody of DaShawn to his father, Charles Israel. (Petr.'s Aff. ¶ 7.) Since May 27, 2008, DaShawn has been living with Mr. Israel and has not returned to the premises at 402 Rutledge Street. (Petr.'s Aff. ¶ 7.) Proper consideration of the new circumstances will show that Ms. Dandridge's termination from the Voucher Program is overly severe and is no longer necessary to remedy the violation.

49.     Proper consideration of all of the mitigating circumstances of Ms. Dandridge's case and a correct application of the rules and regulations support Ms. Dandridge's likelihood of success on the merits of her petition for certiorari.

50.     Finally, principles of equity require that Ms. Dandridge not be terminated from the Voucher Program. The actions of her son do not justify termination when weighed against the loss of the only decent and safe housing she can afford. The lives of Ms. Dandridge, her son, DaJuan, and her cousin Waylan Hughes should not be held hostage to the misguided actions of her sixteen year old son. Ms. Dandridge voluntarily made the difficult decision to relinquish custody of her child to ensure the safety of her household and her neighbors. This remedy should be given a chance to work before permanently baring her family from receiving housing assistance and rendering them homeless.

51.     Accordingly, Ms. Dandridge's request for a stay should be granted just as it would be if she were the petitioner in an administrative review action.

10

III.    PETITIONER'S ALTERNATIVE REQUEST FOR A TEMPORARY RESTRAINING
        ORDER AND PRELIMINARY INJUNCTION

    52.    A motion for temporary restraining order requires the same showing as a motion

for preliminary injunction. *Jacob v. C & M Video, Inc.*, 248 Ill. App. 3d 654, 664, 188 Ill. Dec.

697, 704 (Ill. App. 5th Dist. 1993).  The petitioner seeking a temporary restraining order or

preliminary injunction must show "(1) she has a right in need of protection; (2) legal remedies

will not adequately protect the right; (3) without the injunction, she will suffer irreparable harm;

and (4) if the proof sustains her allegations, she will likely succeed on the merits." *Save the*

*Prairie Soc'y v. Greene Dev. Group, Inc.*, 323 Ill. App. 3d 862, 867, 256 Ill. Dec. 643, 648 (Ill.

App. 1st Dist. 2001).

        i.    *Ms. Dandridge has a protectible right to preserve her housing assistance*
              *payments.*

    53.    To establish a protectible right, the petitioner "'need only show that [she] raised a

'fair question' about the existence of [her] right[.]'" *Id.* (quoting *Schweickart v. Powers*, 245 Ill.

App. 3d 281, 288, 184 Ill. Dec. 376, 383 (Ill. App. 2d Dist. 1993)).  Ms. Dandridge has a right, as

an eligible participant in the Voucher Program, to continue to receive rental subsidies so that she

can afford "decent, safe and sanitary housing." 24 C.F.R. § 982.1(a)(1).   Furthermore, Ms.

Dandridge has a right to preserve her housing assistance payments through a grievance process as

provided for in Respondents' Administrative Plan. 24 C.F.R. § 982.555(a)(1) (detailing public

housing agencies' ("PHA") obligation to provide program participants with a hearing to review

the PHA's termination decision).  Therefore, the Court must grant a temporary restraining order

or a preliminary injunction to protect Ms. Dandridge's rights, pending the resolution of the

controversy.

        ii.    *Ms. Dandridge has no adequate remedy at law to preserve her housing assistance*
               *payments.*

11

54.    An adequate legal remedy "is clear, complete, and is as practical and efficient in achieving prompt administration of justice as is the equitable remedy." *McArdle v. Rodriguez*, 277 Ill. App. 3d 365, 377, 213, Ill. Dec.709, 718 (Ill. App. 1st Dist. 1995). If this Court does not enter a temporary restraining order and preliminary injunction enjoining the Housing Authority from terminating Ms. Dandridge's housing assistance pending the resolution of this case, no legal remedy could compensate Ms. Dandridge for losing the only decent housing she could afford. Therefore, no legal remedy is as practical and efficient as the equitable remedy in this case, which is to prohibit Respondent from terminating Ms. Dandridge's housing assistance payments and require Respondent to pay the delinquent payments for May and June, pending a final disposition from the Court on her Petition for Certiorari.

iii.    *Ms. Dandridge will suffer irreparable harm without the entry of a temporary restraining order and preliminary injunction.*

55.    Once the petitioner establishes a protectible interest, "irreparable injury to the [petitioner] is presumed if the interest remains unprotected." *A-Tech Computer Services, Inc. v. Soo Hoo*, 254 Ill. App. 3d 392, 400, 193 Ill. Dec. 862, 868 (Ill. App. 1st Dist. 1993). Respondent Housing Authority has made subsidy payments to Ms. Dandridge's landlord through April 30, 2008. However, but for the entry of a temporary restraining order and preliminary injunction, the Housing Authority will make no further payments for Ms. Dandridge for the months of May, June, and thereafter. If the Housing Authority terminates this assistance, Ms. Dandridge will suffer irreparable harm. Specifically, Ms. Dandridge cannot afford the rent and will be rendered homeless if her assistance is terminated. She will be forced to leave Park Forest and her young son DaJuan will be torn away from his community and the school he has attended for the last six years. The balance of hardships—continued payment by the Housing Authority versus

12

homelessness—weighs strongly in favor of Ms. Dandridge. Therefore, the Court must grant a temporary restraining order and a preliminary injunction to avoid causing irreparable harm to Ms. Dandridge, DaJuan and Waylan Hughes.

      iv.    *Ms. Dandridge will likely succeed on the merits of her case.*

56.    Ms. Dandridge must only make a showing that she is "entitled to the relief prayed for if the proof should sustain her allegations." *Eldridge v. Eldridge*, 246 Ill. App. 3d 883, 888, 186 Ill. Dec. 818, 823 (Ill. App. 1st Dist. 1993). As discussed in ¶¶ 31-38, supra, Ms. Dandridge is likely to succeed on the merits of her case. The hearing examiner abused his discretion by failing to consider any mitigating factors in his decision, including the lack of participation of Ms. Dandridge, her lack of prior knowledge of the violation, and the fact that there are two other residents in the household who were similarly not culpable for the violation. All three residents will be severely harmed by the discontinuation of payments by the Housing Authority. The hearing examiner also failed to consider a less extreme, more equitable remedy presented by Ms. Dandridge, namely the permanent removal of DaShawn, the violator, from the household. For these reasons, the hearing examiner erred in terminating Ms. Dandridge from the Voucher Program and she will likely be reinstated.

57.    Lastly, Ms. Dandridge is indigent and cannot afford to post bonds as security for the issuance of the temporary restraining order.

WHEREFORE, Petitioner LaShanda Dandridge respectfully requests that this Honorable Court:

    A.    Enter a stay of Respondents' decision to terminate her housing assistance payments pending resolution of this case; and

13

B.    Order the Housing Authority to pay delinquent rent to the landlord at 402

Rutledge Street for the months of May and June.

C.    In the alternative to entering a stay, enter a temporary restraining order, pending a

decision on her motion for a preliminary injunction, enjoining Respondents from

terminating her housing assistance pending resolution of this case; and

D.    Order the Housing Authority to pay delinquent rent to the landlord at 402

Rutledge Street for the months of May and June.

E.    Waive the posting of bond as security for the issuance of this order; and

F.    Grant such other relief as may be proper and just.

Respectfully submitted,

_____
Petitioner's Attorney

Astrid Montealegre
Legal Assistance Foundation of Metropolitan Chicago
900 East 162nd Street, Suite 101
South Holland, Illinois 60471
Tel: (708) 271-4950 Fax: (708) 596-4108
Attorney No. 37201

14

## VERIFICATION

Under penalties as provided by law, pursuant to Section 5/1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief. As to such matter, the undersigned certifies that she believes the same to be true, and if called as a witness, could testify competently thereto.

LaShanda Dandridge

15





March 5, 2008

Ms. LaShanda Dandridge
402 Rutledge
Park Forest, IL  60466

Dear Ms. Dandridge:

This letter is to advise you that we have received documented information that you are in violation of the Housing choice Voucher program rules and guidelines. The Housing Choice Voucher program and all federally assisted housing are under the "One Strike" Policy. This policy states that one incidence of criminal activity is sufficient grounds to terminate participants from the program. Criminal behavior by any household member or guest, regardless of the applicant's knowledge of the behavior is grounds for termination of assistance.

On February 14, 2008, Park Forest police officers responded to a call of gunshots in the area and while in the area heard shots coming from the back yard of your residence. Upon investigation that resulted in a search warrant, weapons, ammunition, U S Currency and suspected cannabis were recovered from the residence and retained as evidence. As a result of this criminal activity, your assistance is being terminated effective April 30, 2008. If you wish to appeal this decision, your request must be in writing and received by the Housing Authority within 10 days from the date of this letter. If your request is not received within the required period, you will waive your right to a hearing and our decision to terminate your assistance will be final. This does not constitute a waiver of your rights to appropriate judicial proceedings.

If you continue to occupy this residence after the effective date of the termination, you will be responsible for paying the full amount of rent to the owner.

Sincerely,

Ernestine Y. Watson
Executive Director

Cc: Peggy Lopez, Landlord
    Housing Authority of the County of Cook

**Park Forest Village Hall • 350 Victory Drive • Park Forest, IL 60466 • 708.748.1112 • FAX 708.748.4355**

May 15, 2008



LASHANDRA DANDRIDGE
402 RUTLEDGE
PARK FOREST, IL

MS DANDRIDGE, AT YOUR HEARING ON APRIL 24, 2008, POLICE OFFICER TESTIFIED THAT HE HEARD
SHOTS COMING FROM BEHIND 402 RUTLEDGE. HE AND ANOTHER OFFICER PROCEEDED TO FIND OUT
WHERE THE SHOTS WERE FIRED FROM. THE OFFICER FOUND YOUR SON, 16 YEAR OLD DEL SHAWN AND
FRIENDS IN YOUR RESIDENT. UPON FURTHER INVESTIGATION 3 GUNS, SPENT AND UNSPENT SHELLS,
ALSO, SOME DRUGS WERE FOUND IN THE HOME.

YOUR SON DELSHAWN WAS ARRESTED.

YOU RECEIVED A LETTER OF TERMINATION FROM THE SECTION 8 RENTAL ASSISTANCE PROGRAM.

YOU, MS DANDRIDGE BROUGHT A NOTARIZED LETTER TO THE HEARING . THE LETTER STATED YOU HAD
TURNED OVER GUARDIANSHIP OF DELSHAWN TO HIS FATHER CHARLES ISRAEL. MR ISRAEL
DID NOT ATTEND THE HEARING TO TESTIFY ON OR IN HIS BEHALF CONCERNING GUARDIAN SHIP OF HIS
SON DELSHAWN.
DELSHAWN BEING YOUR SON , IT WOULD BE HARD TO BELIEVE THAT YOU WOULD NOT RECEIVE HIM IN
YOUR HOME AGAIN.

HIS ACTIONS HAVE ENDANGERED HIMSELF AS WELL AS OTHERS.

THEREFORE, I RECOMMEND THAT THE TERMINATION LETTER STANDS AS STATED.

HEARING OFFICER

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

LASHANDA DANDRIDGE,       )
                              )
         Petitioner,       )
                              )
      v.                   )     No.
                              )
HOUSING AUTHORITY OF PARK  )
FOREST, an Agent of the Housing  )
Authority of the County of Cook,   )
                              )
        Respondent.     )

### AFFIDAVIT

LASHANDA DANDRIDGE, being first duly sworn on oath deposes and says that:

1.    I am the Petitioner in the action, LaShanda Dandridge v. Housing Authority of Park

Forest

2.    I reside with my son, DaJuan, and my cousin, Waylan Hughes, in the premises located at

402 Rutledge Street, Park Forest, Illinois ("402 Rutledge Street") since May 2002. I have never

been in violation of the terms of the lease.

3.    I have been a participant of the Section 8 Housing Choice Voucher Program ("Voucher

Program") since 1996. I have never been in violation of the terms of the Voucher Program.

4.    I did not participate in the violation that occurred on February 14, 2008.

5.    I had no prior knowledge or reason to believe that my son, DaShawn would engage in

criminal behavior.

6.    DaShawn is an excellent student who receives high praise from his teachers.

7.    I relinquished custody of my son DaShawn to his father, Charles Israel, on May 28, 2008,

the last day of DaShawn's school term.

7.    DaShawn terminated his residence at 402 Rutledge Street on May 28, 2008. DaShawn has not visited the premises located at 402 Rutledge Street since May 28, 2008.

8.    I do not pay rent for the premises located at 402 Rutledge Street as it is wholly subsidized by the Housing Authority of Park City ("Housing Authority"). The Housing Authority pays $1,000 per month in rent for 402 Rutledge Street.

9.    The Housing Authority has not made payments to the landlord of 402 Rutledge Street ("Landlord") for the months of May and June. I am currently delinquent for the rent of May and June.

10.    On June 13, 2008, the Landlord threatened to evict me and my family if I did not pay the delinquent rent. The Landlord has informed me that if I am terminated from the Housing Authority's Voucher Program, I will have to pay full rent of $1,500.

11.    I am employed as a customer service agent and have a monthly income of $1,667. I cannot afford to pay the full rent at 402 Rutledge Street and would be forced to move out if I am no longer subsidized by the Housing Authority.

FURTHER THE AFFIANT SAITH NOT

_____
LASHANDA D'ANDRIDGE

Signed and Sworn to
before me this 16th day of
June 2008.

_____
NOTARY PUBLIC

OFFICIAL SEAL
SHERICE A AUSTIN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/12/10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |  |
|---|---|---|---|
| **LASHANDA DANDRIDGE,** | ) | | FILED: JULY 2, 2008 |
| **Petitioner,** | ) | | 08CV3789 |
| | ) | | JUDGE ANDERSEN |
| **v.** | ) | **Case No.** | MAGISTRATE JUDGE COX |
| | ) | | |
| **HOUSING AUTHORITY** | ) | | PH |
| **OF PARK FOREST,** | ) | | |
| **Respondent.** | ) | | |

## NOTICE OF FILING

**TO:**   Astrid C. Montealegre
Legal Assistance Foundation of Metropolitan Chicago
900 East 162nd Street, Suite 101
South Holland, IL 60471
708-271-4950

PLEASE TAKE NOTICE that on the 2nd day of July 2008, we caused to be filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, the foregoing Notice of Removal, a copy of which is hereby served upon you.

_____
Attorney for Respondent

Thomas G. Gardiner
GARDINER KOCH & WEISBERG
53 W. Jackson Blvd., Suite 950
Chicago, Illinois 60604
Telephone 312-362-0000
Facsimile 312-362-0440
Atty. No. 29637

## CERTIFICATE OF SERVICE

The undersigned, an attorney, does hereby certify that he caused to be served on the parties listed above copies of the foregoing notice and attached documents by sending them via U.S. mail from the offices located at 53 West Jackson, Suite 950, Chicago, Illinois 60604, on July 2, 2008 before the hour of 6:00pm.

_____