

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LASHANDA DANDRIDGE,                    )
                                       )
            Plaintiff,                 )
                                       )
      vs.                              )
                                       )
HOUSING AUTHORITY                      )    No. 08 CV3789
OF PARK FOREST,                        )
                                       )    Judge Anderson
            Defendant.                 )    Magistrate Judge Cox

FILED
Aug 11 2008
AUG 1 1 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLAINTIFF'S AMENDED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff, Lashanda Dandridge, by and through her attorneys at the Legal Assistance Foundation of Metropolitan Chicago, moves this Court to grant a temporary restraining order and preliminary injunction ordering Defendant to continue making it's rental subsidy payments on the Plaintiff's behalf to her landlord. In support of this motion, Plaintiff restates and incorporates by reference herein the allegations set forth in her original Motion for Stay, Temporary Restraining Order and/or Preliminary Injunction, attached hereto as Exhibit A[1] and states as follows:

1.      Ms. Dandridge is a participant in the Section 8 Housing Choice Voucher (HCV) Program since 1996. The HVC is a program by which low-income families receive rental

---

[1]Plaintiff's Motion to Stay, Temporary Restraining Order and/or Preliminary Injunction was originally filed in the Circuit Court of Cook County prior to this case being removed to this Court by Defendant.

2

subsidies so that they can rent decent, safe and sanitary housing in the private market. The HCV program is governed by federal regulations codified at 24 C.F.R. Part 982, and administered by State or local entities called public housing agencies ("PHAs"). 24 C.F.R. § 982.1(a).

2.  Ms. Dandridge first became an HCV program participant in 1996 with a voucher issued by the Chicago Housing Authority, the agency responsible for administering the HCV program in the city of Chicago. In 2002, Ms. Dandridge's voucher was transferred from the Chicago Housing Authority to the Housing Authority of Park Forest when she moved to the premises at 402 Rutledge Street. As a voucher participant, Ms. Dandridge received a subsidy for 100% of her rent, in the amount of $1000 per month paid by the Housing Authority of Park Forest to her landlord.

3.  From May 2002 until February 14, 2008, Ms. Dandridge has resided at 402 Rutledge Street and was never cited for violating the terms of her lease or the terms of the Voucher Program. However, on or about February 14, 2008, Ms. Dandridge's son was arrested for engaging in unlawful activities. No member of Ms. Dandridge's household had a criminal record prior to the incident on February 14, 2008.

4.  On March 5, 2008, Ms. Dandridge received a letter from the Housing Authority of Park Forest stating that she was in violation of the Voucher Program rules as a result of the incident of February 14, 2008, and that she would be terminated from the Voucher Program effective April 30, 2008. An informal hearing was held on April 24, 2008 and on May 15, 2008, the Housing Authority hearing officer issued a written decision upholding the termination of Ms. Dandridge's housing assistance and effectively

3

terminated all future payments to her landlord. A copy of the officer's decision is attached as Exhibit B. Consequently, Ms. Dandridge's landlord did not receive any payments after April 2008.

5.    On June 17, 2008 Plaintiff, Lashanda Dandridge filed a civil action challenging the termination of her HCV assistance in the Circuit Court of Cook County, Illinois, County Department, Chancery Division as Case No. 08CH21882. A copy of the Petition for Certiorari is attached as Exhibit C. On the same date, Ms. Dandridge filed a Motion for Stay, Temporary Restraining Order and/or Preliminary Injunction. (Exhibit A) Ms. Dandridge's motion requested that the Housing Authority of Park Forest continue paying her rental subsidy until her rights were adjudicated. Her motion was scheduled to be heard on July 8, 2008 at 9:30 a.m. before the Honorable Judge Agron.

6.    The Circuit Court never heard Ms. Dandridge's motion because on July 2, 2008 Defendant filed a Notice of Removal and the case was removed to the United States District Court for the Northern District of Illinois, Eastern Division.

7.    On July 20, 2008, Ms. Dandridge's landlord served her with a termination of tenancy for non-payment of rent in the amount of $3,000.

8.    Lashanda Dandridge seeks an order enjoining Defendants from taking any action to upset the status quo until her rights are adjudicated, including ordering Defendant to pay the rental subsidy to the landlord at 402 Rutledge Street for the months of May, June and July in the amount of $3,000.00 and prospectively in the amount of $1,000.00 per month.

9.    There are four prerequisites for preliminary injunctive relief: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law and irreparable harm if the

injunction is not granted; (3) the threatened injury to movant outweighs the threatened

harm from granting the injunction; and (4) the injunction does not disserve the public

interest. *Abbott Labs v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992).

10.    The greater the showing movant makes on some factors, the less need be shown on other

factors. *Id.*

11.    Lashanda Dandridge  is very likely to succeed on the merits because the hearing officer

violated federal regulations when she failed to consider mitigating circumstances. Prior to

making its termination decision, the Housing Authority is required under its rules and

regulations to consider mitigating circumstances. *Gaston v. Chac, inc.*, 375 Ill. App. 3d

16, 24, 313 Ill. Dec. 278 (Ill. App. 1st Dist. 2007) Mitigating factors include "the extent of

participation or culpability of individual family members... and the effects of the denial or

termination of assistance on other family members who were not involved in the action or

failure." 24 C.F.R. 982.552(c)(2)(i) (2008).  The hearing officer failed to consider

mitigating circumstances in violation of federal law.  The decision issued by the hearing

officer fails to mention any mitigating circumstances that were considered pursuant to 24

C.F.R. § 982.552(c)(2)(i), including: the lack of participation and culpability on the part

of Ms. Dandridge and the two other members of the household,  the lack of knowledge or

foreseeability of her son's actions, and the devastating effect the termination of assistance

will have on the lives of the family members who were not culpable for the violation.

See hearing officer's decision attached as Exhibit B.  The Housing Authority abused its

discretion by failing to pursue an alternative, less extreme sanction pursuant to 24 C.F.R.

§ 982.552(c)(2)(ii), specifically by continuing assistance conditioned on a requirement

that the family member who participated in the unlawful activity be prohibited from residing at 402 Rutledge Street. The Housing Authority of Park Forrest failed to consider any of the mitigating circumstance or alternative remedies in upholding the decision to terminate Ms. Dandridge's voucher assistance. As, such, Ms. Dandridge will likely succeed on the merits of her petition

12.    Lashanda Dandridge will also suffer irreparable harm for which there is no adequate remedy at law. Specifically, Ms. Dandridge and her family, will be forced to vacate their house and will become homeless because Ms. Dandridge cannot afford housing in the private market.

13.    Further, because real property is unique, its loss has historically been considered an irreparable injury for which there is no adequate remedy at law. *United Church of the Medical Center v. Medical Center Commons*, 689 F.2d 693, 701 (7th Cir. 1982). There is no legal remedy available that could compensate Ms. Dandridge for losing the only decent housing she could afford and she will suffer irreparable harm if the injunctive relief requested is not granted.

14.    The balance of hardships greatly favors Ms. Dandridge is at risk of suffering dramatically greater harm than Defendants. She and her family stand to lose their home with no realistic alternative, while Defendants would simply continue to make the same payments they have been making to Ms. Dandridge's landlord since 2002.

15.    The public interest will not be disserved by allowing Lashanda Dandridge to continue to receive rental assistance payments until the final disposition of her claim. The express purpose of the HCV program is to give families the opportunity to afford

6

safe, decent, and sanitary housing, *See* 24 C.F.R. 982.1(a)(1). It is certainly not in the public interest to preemptively force a family into homelessness before this matter is adjudicated.

16.     LaShanda Dandridge is indigent and cannot afford to post bond as security for the issuance of the temporary restraining order.

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

A.     Enter an order barring Respondents' from terminating Ms. Dandridge's housing assistance pending resolution of this case.

B.   Issue a temporary restraining order, pending a decision on her motion for a preliminary injunction, ordering the Housing Authority to pay delinquent rent to the landlord at 402 Rutledge Street for the months of May, June, and July in the amount of $3,000.00 and prospectively in the amount of $1,000.00 per month.

C.     Schedule a pre-hearing conference to set a discovery schedule and hearing date for the preliminary injunction;

D.     Issue a preliminary injunction enjoining Defendant from terminating Ms. Dandridge's housing assistance pending resolution of this case; and

E.     Excuse Plaintiff from posting security under Fed. R. Civ. P. 65(c).

7

Respectfully submitted,

s/ Astrid C. Montealegre

One of the Attorneys for Plaintiff

Attorneys for Plaintiff:
Richard Wheelock
Jack Block
Larry Wood
Astrid Montealegre
Legal Assistance Foundation of
Metropolitan Chicago
111 W. Jackson, 3d Floor
Chicago, IL 60604
(312) 341-1070

8

Exhibit A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

LASHANDA DANDRIDGE,                    )
                                       )
                Petitioner,            )
                                       )
        v.                             )    No.    08CH21882
                                       )
HOUSING AUTHORITY OF PARK              )
FOREST, an Agent of the Housing        )
Authority of the County of Cook,       )
                                       )
                Respondent.            )

## PETITIONER'S MOTION FOR STAY OR IN THE ALTERNATIVE A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Now comes the petitioner, LaShanda Dandridge, by her attorneys, Astrid C. Montealegre
and the Legal Assistance Foundation of Metropolitan Chicago, and moves this Court for the
issuance of a stay or in the alternative a temporary restraining order and preliminary injunction
enjoining Respondent Housing Authority of Park Forest ("Housing Authority") from terminating
her housing assistance payments pending the resolution of this case.

1

I.     INTRODUCTION

1-21.    The Petitioner, LaShanda Dandridge, restates the allegations set forth in ¶¶ 1-21 from her Petition for Certiorari and hereby incorporates it by reference.

22.    Petitioner's action for judicial review of the Respondents' administrative agency decision is a common law petition for certiorari rather than an administrative review action brought under the Administrative Review Law ("ARL"). Where the ARL has not been expressly adopted, the writ of common law certiorari is an available method of reviewing the actions of administrative agencies and tribunals. *Russell v. Dep't of Natural Resources*, 183 Ill. 2d 434, 440-41 (1998) (citing *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996); *Stratton v. Wenona Cmty. Unit Dist. No. 1*, 133 Ill. 2d 413, 427 (1990)). The Housing Authorities Act ("HAA") is the enabling statute for the Housing Authority of Park Forest. *See* 310 ILL. COMP. STAT. 10/1 *et seq.* (2008). Because the HAA makes no reference to the ARL, judicial review of the decisions from the Respondent Housing Authority is by certiorari.

23.    The differences that formerly existed between common law certiorari and administrative review actions filed under the ARL are no longer recognized. *Smith v. Dep't of Pub. Aid*, 67 Ill. 2d 529, 541-42, 10 Ill. Dec. 520 (1977) (citing *Homefinders, Inc. v. City of Evanston*, 65 Ill. 2d 115, 2 Ill. Dec. 565 (1976); *Nowicki v. Evanston Fair Hous. Review Bd.*, 62 Ill. 2d 11, (1975)). Furthermore, the standards of review for both kinds of actions are "essentially the same[.]" *See Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996).

2

24.    In ARL administrative review actions, circuit courts may "upon notice to the agency and good cause shown . . . stay the decision of the administrative agency in whole or in part pending the final disposition of the case." 735 ILL. COMP. STAT. 5/3-111(a)(1) (2008). Given that the Petitioner seeks judicial review of an administrative proceeding, she requests that the Court stay the Housing Authority's decision to terminate her housing assistance payments pending a final disposition of her petition for certiorari.

25.    Petitioner recognizes that in non-ARL actions, relief similar to a stay is sought through a motion for a temporary restraining order and preliminary injunction. *See* 735 ILL. COMP. STAT 5/11-101, 102 (2008). Therefore, in the alternative to her request for a stay, Petitioner seeks a temporary restraining order and a preliminary injunction enjoining Respondent Housing Authority from terminating her housing assistance payments pending the resolution of this case.

II.    STATEMENT OF FACTS

26.    Ms. Dandridge first entered the Voucher Program in 1996 through the Chicago Housing Authority, the agency responsible for administering the Voucher Program in Metropolitan Chicago. In 2002, Ms. Dandridge transferred from the Chicago Housing Authority to the Housing Authority of Park Forest when she moved to the premise at 402 Rutledge Street.

3

27.    From May 2002 until February 14, 2008, Ms. Dandridge has resided at 402 Rutledge Street and was never cited for violating the terms of her lease or the terms of the Voucher Program.

28.    Every year, for the last twelve years Ms. Dandridge submitted a detailed recertification application to continue in the Voucher Program. The application requires full disclosure of sources of income, household composition, living expenses, and criminal convictions or arrests. Never once in those twelve years was Ms. Dandridge found in violation of the terms of the Voucher Program or her leases.

29.    Ms. Dandridge resides with her two children, DaShawn, sixteen years old, and DaJuan, fourteen years old, and her cousin Waylan Hughes, twenty-four years old.

30.    On February 14, 2008, DaShawn and two other friends were at home at 402 Rutledge Street. DaJuan was upstairs in his room while Waylan Hughes and Ms. Dandridge were not at home. A gun was discharged in the backyard of the house and police responded on the scene. After interrogating DaShawn, DaJuan and DaShawn's two friends, DaShawn was arrested and charged with unlawful possession of a firearm. No one was harmed by the discharge. As a result, DaShawn spent one month in juvenile detention. Neither DaJuan nor any other household member was charged in connection with the incident.

31.    Neither Ms. Dandridge, her son DaJuan, nor Waylan Hughes had any knowledge that a gun was in DaShawn's possession or located on the premise at 402 Rutledge Street. Ms. Dandridge had no prior knowledge nor reason to suspect that her son DaShawn was involved, or could be involved, in criminal activity.

32.    No member of Ms. Dandridge's household had a criminal record prior to the incident on February 14, 2008.

4

33.     On March 5, 2008, Ms. Dandridge received a letter from the Housing Authority of Park Forest stating that she was in violation of the Voucher Program rules as a result of the incident of February 14, 2008, and that she would be terminated from the Voucher Program effective April 30, 2008. A copy of this letter is attached as Exhibit A.

34.     Ms. Dandridge appealed this decision within the requisite ten days.

35.     An informal hearing was held on April 24, 2008. At the hearing, Ms. Dandridge presented a notarized letter from Charles Israel attesting to the fact that he would take custody of DaShawn on May 27, 2008--the last day of the school year. Ms. Dandridge also testified to the adverse affects that the Voucher revocation would have on not only herself, but on her son, DaJuan, and her cousin Waylan Hughes who live with her.

36.     On May 15, 2008, the Housing Authority hearing officer issued a written decision upholding the termination of Ms. Dandridge's housing assistance. A copy of the decision is attached as Exhibit B.

37.     On May 27, 2008, Ms. Dandridge relinquished custody of DaShawn to his father, Charles Israel. DaShawn has been living with his father at his home since that date. DaShawn has not visited the premises at 402 Rutledge Street since he moved out.

III.     PETITIONER'S REQUEST FOR A STAY

38.     Pending the final disposition of a case, a circuit court may stay the decision of an administrative agency in whole or in part upon notice to the agency and good cause shown. *See* 735 ILL. COMP. STAT. 5/3-111(a)(1) (2008).  A petitioner satisfies the "good cause" requirement by demonstrating: "(i) that an immediate stay is required in order to preserve the status quo without endangering the public, (ii) that it is not contrary to public policy, and (iii) that there exists a reasonable likelihood of success on the merits." *Id.*

> i. *The Court's issuance of an immediate stay is required in order to preserve the status quo and does not endanger the public.*

39.     In Illinois court, the "'[s]tatus quo' has been described as that situation which represents the last, actual, peaceable, uncontested status preceding the pending controversy." Jones v. Dep't of Public Aid, 373 Ill. App. 3d 184, 193 (Ill. App. 3d Dist. 2007).  Prior to the controversy, the landlord received full rent from the Housing Authority for 402 Rutledge Street. The pending controversy began on April 30, 2008 when the Housing Authority issued a final administrative decision upholding the termination of Ms. Dandridge's housing assistance payments.  On May 1, 2008, the Housing Authority ceased paying Ms. Dandridge's rent.  On June 13, 2008, the landlord of 402 Rutledge Street threatened to evict Ms. Dandridge if she did not pay rent for the months of May and June.  (*See* Petr.'s Aff. ¶ 10.)  Because Ms. Dandridge and her family cannot afford to pay any rent, they are currently at risk of being rendered homeless.  Therefore, to preserve the status quo prior to the pending controversy, the Housing Authority must make payments for the months of May and June, and continue making payments for subsequent months, so that Ms. Dandridge and her family can continue residing in her home pending the resolution of this case.

6

40.    The Court's issuance of a stay to preserve the status quo, and to keep Ms.
Dandridge in her unit, will in no way endanger the public. The perpetrator of the alleged
violation, DaShawn, has been out of the household and under the guardianship of his father,
Charles Israel, since May 27, 2008. (Petr.'s Aff. ¶ 7.) DaShawn does not visit the premises at
402 Rutledge Street. No member of Ms. Dandridge's current household has a criminal record or
has engaged in criminal conduct. For these reason, the Court's issuance of a stay, allowing Ms.
Dandridge's household to remain at 402 Rutledge Street, will in no way endanger the public. In
the alternative, the absence of a stay will endanger Ms. Dandridge's family because they will be
evicted for failure to pay rent and will be rendered homeless.

    ii. *The Court's issuance of an immediate stay is not contrary to public policy.*

41.    Illinois courts determine the existence of public policy by looking to, *inter alia,*
statutes. *Metz v. Dep't of Prof'l Regulation,* 332 Ill. App. 3d 1033, 1036, 266 Ill. Dec. 164, 167
(Ill. App. 1st Dist. 2002) (citing *Am. Fed'n of State, County & Mun. Employees v. Dep't of Cent.*
*Mgmt. Servs.,* 173 Ill. 2d 299, 308, 219 Ill. Dec. 501, 507 (1996)). In the Housing Authorities
Act, the Illinois legislature recognized the need for creating housing authorities "to promote and
protect the health, safety, morals and welfare of the public" by engaging in efforts that would
relieve the shortage of safe, decent, sanitary, and affordable housing. 310 ILL. COMP. STAT. 10/2
(2008). Similarly, the express purpose of the Respondents' Section 8 voucher program is to give
eligible families the opportunity to afford safe, decent, and sanitary housing. *See* 24 C.F.R.
982.1(a)(1).

42.    Ms. Dandridge, a single mother with a monthly income of $1,667, cannot afford
her full contract rent, which according to her landlord, would be at least $1,500 per month.
(Petr.'s Aff. 11.) Because she cannot afford that amount, Ms. Dandridge, her son DaJuan, and

her cousin Waylan Hughes will almost certainly be evicted for nonpayment of rent and, because Ms. Dandridge cannot afford housing in the private market, will become homeless. A balance of hardships favors granting a stay because while the Housing Authority of Park Forest only has to continue the assistance they have provided Ms. Dandridge for the past twelve years, Ms. Dandridge and her young son stand to lose the only decent, safe, and sanitary housing they can afford. Maintaining the status quo is entirely consistent with the purpose of the Voucher Program, which is to administer "rental subsidies so eligible families can afford decent, safe and sanitary housing." 24 C.F.R. § 982.1(a)(1) (2008). Therefore, the Court's issuance of a stay of Respondent Housing Authority's termination of Ms. Dandridge's rental assistance, to prevent her certain loss of the only decent, safe, and sanitary housing she can afford pending the disposition of this case, is not contrary to the public policy of providing affordable housing to low-income residents.

> iii. *The Petitioner enjoys a reasonable likelihood of success on the merits of her petition.*

43.     Prior to making its termination decision, the Housing Authority is required under its rules and regulations to consider mitigating circumstances. *Gaston v. CHAC, Inc.*, 375 Ill. App. 3d 16, 24, 313 Ill. Dec. 278 (Ill. App. 1st Dist. 2007). Mitigating factors include "the extent of participation or culpability of individual family members . . . and the effects of the denial or termination of assistance on other family members who were not involved in the action or failure." 24 C.F.R. 982.552(c)(2)(i) (2008). In addition, the hearing examiner may also "impose, as a condition of continued assistance a requirement that other family members who participated in . . . the action will not reside in the unit. 24 C.F.R. 982.552(c)(2)(ii). The hearing officer considered none of these circumstances or alternative remedies in upholding the termination of Ms. Dandridge's voucher assistance. As such, Ms. Dandridge will likely succeed

8

on the merits of her petition because proper consideration of her mitigating circumstances will further justify reversal of her termination from the Voucher Program.

44.     First, Ms. Dandridge, DaJuan and Waylan Hughes did not participate in any way in the violation that occurred on February 28, 2008. (The only person who acted in violation of the Voucher Program agreement was DaShawn, who no longer resides in the premises.) (Petr. Aff. ¶ 3.)

45.     Second, Ms. Dandridge had no prior knowledge of, nor reason to predict DaShawn's violation until the initial arrest. DaShawn is an excellent student, well liked by his teachers, with no prior incidents that would have forewarn Ms. Dandridge of any trouble. DaJuan Dandridge and Waylan Hughes were similarly unaware of DaShawn's activities.

46.     Third, the Housing Authority failed to consider the severe consequences on the entire household that would result from the termination of Ms. Dandridge from the Voucher Program. Ms. Dandridge has relied on voucher assistance for the past twelve years with no prior violations. She is a hard working single mother who wants a safe and clean environment to raise her fourteen year old son. If terminated from the program, Ms. Dandridge will be permanently bared from receiving future assistance and will be rendered homeless along with her young son DaJuan and her cousin Waylan Hughes. The Housing Authority failed to give due weight to the severity of terminating Ms. Dandridge's participation in the Voucher program.

47.     Ms. Dandridge's, and her household's, lack of participation in, and lack of prior knowledge of DaShawn's infractions is undisputed by the Housing Authority; nor is the severity of the consequences that would result from Ms. Dandridge's termination in dispute. Yet nowhere in the Housing Authority's final decision does the hearing examiner give weight to these mitigating circumstances. (*See* Hearing Examiner's Report, Exhibit B.) Therefore, the lack

of culpability and lack of knowledge of the three remaining household members supports the conclusion that Ms. Dandridge should be not have been terminated from the Voucher Program.

48.     Additionally, following DaShawn's arrest on February 28, 2008, Ms. Dandridge immediately realized the seriousness of her son's infraction and took necessary action. (Petr.'s Aff. ¶ 7-.) After DaShawn returned from Juvenile Detention, she gave up legal custody of DaShawn to his father, Charles Israel. (Petr.'s Aff. ¶ 7.) Since May 27, 2008, DaShawn has been living with Mr. Israel and has not returned to the premises at 402 Rutledge Street. (Petr.'s Aff. ¶ 7.) Proper consideration of the new circumstances will show that Ms. Dandridge's termination from the Voucher Program is overly severe and is no longer necessary to remedy the violation.

49.     Proper consideration of all of the mitigating circumstances of Ms. Dandridge's case and a correct application of the rules and regulations support Ms. Dandridge's likelihood of success on the merits of her petition for certiorari.

50.     Finally, principles of equity require that Ms. Dandridge not be terminated from the Voucher Program. The actions of her son do not justify termination when weighed against the loss of the only decent and safe housing she can afford. The lives of Ms. Dandridge, her son, DaJuan, and her cousin Waylan Hughes should not be held hostage to the misguided actions of her sixteen year old son. Ms. Dandridge voluntarily made the difficult decision to relinquish custody of her child to ensure the safety of her household and her neighbors. This remedy should be given a chance to work before permanently baring her family from receiving housing assistance and rendering them homeless.

51.     Accordingly, Ms. Dandridge's request for a stay should be granted just as it would be if she were the petitioner in an administrative review action.

III.    PETITIONER'S ALTERNATIVE REQUEST FOR A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION

52.    A motion for temporary restraining order requires the same showing as a motion

for preliminary injunction. *Jacob v. C & M Video, Inc.*, 248 Ill. App. 3d 654, 664, 188 Ill. Dec.

697, 704 (Ill. App. 5th Dist. 1993). The petitioner seeking a temporary restraining order or

preliminary injunction must show "(1) she has a right in need of protection; (2) legal remedies

will not adequately protect the right; (3) without the injunction, she will suffer irreparable harm;

and (4) if the proof sustains her allegations, she will likely succeed on the merits." *Save the*

*Prairie Soc'y v. Greene Dev. Group, Inc.*, 323 Ill. App. 3d 862, 867, 256 Ill. Dec. 643, 648 (Ill.

App. 1st Dist. 2001).

> i.  *Ms. Dandridge has a protectible right to preserve her housing assistance*
>     *payments.*

53.    To establish a protectible right, the petitioner "'need only show that [she] raised a

'fair question' about the existence of [her] right[.]'" *Id.* (quoting *Schweickart v. Powers*, 245 Ill.

App. 3d 281, 288, 184 Ill. Dec. 376, 383 (Ill. App. 2d Dist. 1993)). Ms. Dandridge has a right, as

an eligible participant in the Voucher Program, to continue to receive rental subsidies so that she

can afford "decent, safe and sanitary housing." 24 C.F.R. § 982.1(a)(1). Furthermore, Ms.

Dandridge has a right to preserve her housing assistance payments through a grievance process as

provided for in Respondents' Administrative Plan. 24 C.F.R. § 982.555(a)(1) (detailing public

housing agencies' ("PHA") obligation to provide program participants with a hearing to review

the PHA's termination decision). Therefore, the Court must grant a temporary restraining order

or a preliminary injunction to protect Ms. Dandridge's rights, pending the resolution of the

controversy.

> ii.  *Ms. Dandridge has no adequate remedy at law to preserve her housing assistance*
>      *payments.*

11

54.     An adequate legal remedy "is clear, complete, and is as practical and efficient in achieving prompt administration of justice as is the equitable remedy." *McArdle v. Rodriguez*, 277 Ill. App. 3d 365, 377, 213, Ill. Dec.709, 718 (Ill. App. 1st Dist. 1995). If this Court does not enter a temporary restraining order and preliminary injunction enjoining the Housing Authority from terminating Ms. Dandridge's housing assistance pending the resolution of this case, no legal remedy could compensate Ms. Dandridge for losing the only decent housing she could afford. Therefore, no legal remedy is as practical and efficient as the equitable remedy in this case, which is to prohibit Respondent from terminating Ms. Dandridge's housing assistance payments and require Respondent to pay the delinquent payments for May and June, pending a final disposition from the Court on her Petition for Certiorari.

      iii.     *Ms. Dandridge will suffer irreparable harm without the entry of a temporary restraining order and preliminary injunction.*

55.     Once the petitioner establishes a protectible interest, "irreparable injury to the [petitioner] is presumed if the interest remains unprotected." *A-Tech Computer Services, Inc. v. Soo Hoo*, 254 Ill. App. 3d 392, 400, 193 Ill. Dec. 862, 868 (Ill. App. 1st Dist. 1993). Respondent Housing Authority has made subsidy payments to Ms. Dandridge's landlord through April 30, 2008. However, but for the entry of a temporary restraining order and preliminary injunction, the Housing Authority will make no further payments for Ms. Dandridge for the months of May, June, and thereafter. If the Housing Authority terminates this assistance, Ms. Dandridge will suffer irreparable harm. Specifically, Ms. Dandridge cannot afford the rent and will be rendered homeless if her assistance is terminated. She will be forced to leave Park Forest and her young son DaJuan will be torn away from his community and the school he has attended for the last six years. The balance of hardships—continued payment by the Housing Authority versus

12

homelessness—weighs strongly in favor of Ms. Dandridge. Therefore, the Court must grant a temporary restraining order and a preliminary injunction to avoid causing irreparable harm to Ms. Dandridge, DaJuan and Waylan Hughes.

      iv.    *Ms. Dandridge will likely succeed on the merits of her case.*

      56.    Ms. Dandridge must only make a showing that she is "entitled to the relief prayed for if the proof should sustain her allegations." *Eldridge v. Eldridge*, 246 Ill. App. 3d 883, 888, 186 Ill. Dec. 818, 823 (Ill. App. 1st Dist. 1993). As discussed in ¶¶ 31-38, supra, Ms. Dandridge is likely to succeed on the merits of her case. The hearing examiner abused his discretion by failing to consider any mitigating factors in his decision, including the lack of participation of Ms. Dandridge, her lack of prior knowledge of the violation, and the fact that there are two other residents in the household who were similarly not culpable for the violation. All three residents will be severely harmed by the discontinuation of payments by the Housing Authority. The hearing examiner also failed to consider a less extreme, more equitable remedy presented by Ms. Dandridge, namely the permanent removal of DaShawn, the violator, from the household. For these reasons, the hearing examiner erred in terminating Ms. Dandridge from the Voucher Program and she will likely be reinstated.

      57.    Lastly, Ms. Dandridge is indigent and cannot afford to post bonds as security for the issuance of the temporary restraining order.

      WHEREFORE, Petitioner LaShanda Dandridge respectfully requests that this Honorable Court:

      A.    Enter a stay of Respondents' decision to terminate her housing assistance payments pending resolution of this case; and

B.    Order the Housing Authority to pay delinquent rent to the landlord at 402 Rutledge Street for the months of May and June.

C.    In the alternative to entering a stay, enter a temporary restraining order, pending a decision on her motion for a preliminary injunction, enjoining Respondents from terminating her housing assistance pending resolution of this case; and

D.    Order the Housing Authority to pay delinquent rent to the landlord at 402 Rutledge Street for the months of May and June.

E.    Waive the posting of bond as security for the issuance of this order; and

F.    Grant such other relief as may be proper and just.

Respectfully submitted,

_____
Petitioner's Attorney

Astrid Montealegre
Legal Assistance Foundation of Metropolitan Chicago
900 East 162nd Street, Suite 101
South Holland, Illinois 60471
Tel: (708) 271-4950 Fax: (708) 596-4108
Attorney No. 37201

## VERIFICATION

Under penalties as provided by law, pursuant to Section 5/1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief. As to such matter, the undersigned certifies that she believes the same to be true, and if called as a witness, could testify competently thereto.

LaShanda Dandridge





March 5, 2008

Ms. LaShanda Dandridge
402 Rutledge
Park Forest, IL   60466

Dear Ms. Dandridge:

This letter is to advise you that we have received documented information that you are in violation of the Housing choice Voucher program rules and guidelines.  The Housing Choice Voucher program and all federally assisted housing are under the "One Strike" Policy.  This policy states that one incidence of criminal activity is sufficient grounds to terminate participants from the program.  Criminal behavior by any household member or guest, regardless of the applicant's knowledge of the behavior is grounds for termination of assistance.

On February 14, 2008, Park Forest police officers responded to a call of gunshots in the area and while in the area heard shots coming from the back yard of your residence. Upon investigation that resulted in a search warrant, weapons, ammunition, U S Currency and suspected cannabis were recovered from the residence and retained as evidence.  As a result of this criminal activity, your assistance is being terminated effective April 30, 2008.  If you wish to appeal this decision, your request must be in writing and received by the Housing Authority within 10 days from the date of this letter.  If your request is not received within the required period, you will waive your right to a hearing and our decision to terminate your assistance will be final.  This does not constitute a waiver of your rights to appropriate judicial proceedings.

If you continue to occupy this residence after the effective date of the termination, you will be responsible for paying the full amount of rent to the owner.

Sincerely,

Ernestine Y. Watson
Executive Director

Cc: Peggy Lopez, Landlord
     Housing Authority of the County of Cook

**Park Forest Village Hall • 350 Victory Drive • Park Forest, IL 60466 • 708.748.1112 • FAX 708.748.4355**

May 15, 2008



LASHANDRA DANDRIDGE
402 RUTLEDGE
PARK FOREST, IL

MS DANDRIDGE, AT YOUR HEARING ON APRIL24,2008, POLICE OFFICER TESTIFIED  THAT HE HEARD
SHOTS COMING FROM  BEHIND  402 RUTLEDGE. HE AND ANOTHER OFFICER PROCEEDED TO FIND OUT
WHERE THE SHOTS WERE FIRED FROM. THE OFFICER FOUND YOUR SON, 16 YEAR OLD DEL SHAWN AND
FRIENDS IN YOUR RESIDENT. UPON FURTHER INVESTIGATION  3 GUNS,SPENT AND UNSPENT SHELLS,
ALSO, SOME DRUGS WERE FOUND IN THE HOME.

YOUR SON DELSHAWN WAS ARRESTED.

YOU RECEIVED A LETTER OF TERMINATION  FROM THE SECTION 8 RENTAL ASSISTANCE PROGRAM.

YOU, MS DANDRIDGE BROUGHT A NOTARIZED LETTER  TO THE HEARING . THE LETTER STATED YOU HAD
TURNED OVER GUARDIANSHIP OF DELSHAWN TO HIS FATHER CHARLES ISRAEL.. MR ISRAEL
DID NOT ATTEND THE HEARING TO TESTIFY ON OR IN HIS BEHALF CONCERNING GUARDIAN SHIP OF HIS
SON DELSHAWN.
DELSHAWN BEING YOUR SON , IT WOULD BE HARD  TO BELIEVE THAT YOU WOULD NOT RECEIVE HIM IN
YOUR HOME AGAIN.

HIS ACTIONS HAVE ENDANGERED HIMSELF AS WELL AS OTHERS.

THEREFORE, I RECOMMEND THAT THE TERMINATION LETTER STANDS AS STATED.




HEARING OFFICER

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| LASHANDA DANDRIDGE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| HOUSING AUTHORITY OF PARK | ) | |
| FOREST, an Agent of the Housing | ) | |
| Authority of the County of Cook, | ) | |
| | ) | |
| Respondent. | ) | |

## AFFIDAVIT

LASHANDA DANDRIDGE, being first duly sworn on oath deposes and says that:

1.      I am the Petitioner in the action, LaShanda Dandridge v. Housing Authority of Park Forest

2.      I reside with my son, DaJuan, and my cousin, Waylan Hughes, in the premises located at 402 Rutledge Street, Park Forest, Illinois ("402 Rutledge Street") since May 2002. I have never been in violation of the terms of the lease.

3.      I have been a participant of the Section 8 Housing Choice Voucher Program ("Voucher Program") since 1996. I have never been in violation of the terms of the Voucher Program.

4.      I did not participate in the violation that occurred on February 14, 2008.

5.      I had no prior knowledge or reason to believe that my son, DaShawn would engage in criminal behavior.

6.      DaShawn is an excellent student who receives high praise from his teachers.

7.      I relinquished custody of my son DaShawn to his father, Charles Israel, on May 28, 2008, the last day of DaShawn's school term.

EXHIBIT

7.      DaShawn terminated his residence at 402 Rutledge Street on May 28, 2008.  DaShawn

has not visited the premises located at 402 Rutledge Street since May 28, 2008.

8.      I do not pay rent for the premises located at 402 Rutledge Street as it is wholly subsidized

by the Housing Authority of Park City ("Housing Authority").  The Housing Authority pays

$1,000 per month in rent for 402 Rutledge Street.

9.      The Housing Authority has not made payments to the landlord of 402 Rutledge Street

("Landlord") for the months of May and June.  I am currently delinquent for the rent of May and

June.

10.     On June 13, 2008, the Landlord threatened to evict me and my family if I did not pay the

delinquent rent.  The Landlord has informed me that if I am terminated from the Housing

Authority's Voucher Program, I will have to pay full rent of $1,500.

11.     I am employed as a customer service agent and have a monthly income of $1,667.  I

cannot afford to pay the full rent at 402 Rutledge Street and would be forced to move out if I am

no longer subsidized by the Housing Authority.

FURTHER THE AFFIANT SAITH NOT

LASHANDA D'ANDRIDGE

Signed and Sworn to
before me this 16th day of
June 2008.

NOTARY PUBLIC

OFFICIAL SEAL
SHERICE A AUSTIN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/12/10

Exhibit B

May 15, 2008



LASHANDRA DANDRIDGE
402 RUTLEDGE
PARK FOREST, IL


MS DANDRIDGE, AT YOUR HEARING ON APRIL24,2008, POLICE OFFICER TESTIFIED  THAT HE HEARD
SHOTS COMING FROM  BEHIND  402 RUTLEDGE. HE AND ANOTHER OFFICER PROCEEDED TO FIND OUT
WHERE THE SHOTS WERE FIRED FROM. THE OFFICER FOUND YOUR SON, 16 YEAR OLD DEL SHAWN AND
FRIENDS IN HIS RESIDENT. UPON FURTHER INVESTIGATION  3 GUNS,SPENT AND UNSPENT SHELLS,
ALSO, SOME DRUGS WERE FOUND IN THE HOME.

YOUR SON DELSHAWN WAS ARRESTED.

YOU RECEIVED A LETTER OF TERMINATION  FROM THE SECTION 8 RENTAL ASSISTANCE PROGRAM.

YOU, MS DANDRIDGE BROUGHT A NOTARIZED LETTER  TO THE HEARING . THE LETTER STATED YOU HAD
TURNED OVER GUARDIANSHIP OF DELSHAWN TO HIS FATHER CHARLES ISRAEL. MR ISRAEL
DID NOT ATTEND THE HEARING TO TESTIFY ON OR IN HIS BEHALF CONCERNING GUARDIAN SHIP OF HIS
SON DELSHAWN.
DELSHAWN BEING YOUR SON , IT WOULD BE HARD  TO BELIEVE THAT YOU WOULD NOT RECEIVE HIM IN
YOUR HOME AGAIN.

HIS ACTIONS HAVE ENDANGERED HIMSELF AS WELL AS OTHERS.

THEREFORE, I RECOMMEND THAT THE TERMINATION LETTER STANDS AS STATED.


                                        HEARING OFFICER